UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 15-35358 |
| | ) | |
| LB STEEL, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | |
| LB STEEL, LLC, | ) | Adversary Case No. 15-00876 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WALSH CONSTRUCTION COMPANY and DOROTHY BROWN, CLERK OF THE CIRCUIT COURT, COOK COUNTY, ILLINOIS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

LB Steel, LLC (the "Debtor") filed an adversary complaint against Walsh Construction Company ("Walsh") and Dorothy Brown, Clerk of the Circuit Court of Cook County (the "Clerk"), seeking both a determination that certain funds deposited with the Clerk are property of the Debtor's bankruptcy estate and turnover of those funds to the Debtor, the latter pursuant to 11 U.S.C. § 543.[1] Before the Court for ruling is Walsh's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(6), made

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). For the reasons that follow, the motion will be granted, and the complaint will be dismissed.

## FACTS

On a Rule 12(b)(6) motion to dismiss, the Court considers the facts both in the complaint and in any exhibits attached to the complaint, as well as information of which the Court can take judicial notice. *See* Fed. R. Civ. P. 10(c) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7010); *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The well-pleaded facts are taken as true for purposes of the motion, and all reasonable inferences from the facts are drawn in favor of the non-movant. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 612 (7th Cir. 2014); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). In this matter, the complaint, the exhibit attached thereto, and other documents filed in the bankruptcy case allege the following facts.

In January 2003, Walsh contracted with the City of Chicago (the "City") to serve as the general contractor for a construction project at O'Hare International Airport (the "Project"). Subsequently, Walsh executed a subcontract with Carlo Steel Corporation ("Carlo Steel") to fabricate steel canopies for the Project. On March 12, 2003, Carlo Steel entered into a sub-subcontract with the Debtor to make steel supports for the canopies. The Debtor, in turn, executed an agreement with Calumet Testing, Inc. ("Cal Testing") to provide weld-testing services for the steel supports.

About two years later, a surge of litigation began.

In February 2005, the Debtor filed suit in the Circuit Court of Cook County (the "Circuit Court") against Carlo Steel, Walsh, the City, and others in Case No. 05 CH 2675 for, among

other things, recovery of the unpaid contract balance owed to the Debtor, as well as owner-approved extras and other work performed by the Debtor in connection with the Project. Additionally, the Debtor sought adjudication of its mechanic's lien of $1,554,654 on the public funds associated with the Project. That amount was the balance due by the City to Walsh on their contract.

In 2007, after finding various alleged construction defects in the work done on the Project, the City filed suit in the Circuit Court against Walsh for breach of contract in Case No. 07 L 3886. Thereafter, Walsh sued Carlo Steel, and Carlo Steel, in turn, filed a third-party complaint against the Debtor. Carlo Steel later assigned its claim against the Debtor to Walsh.

On June 19, 2008, the Debtor filed a complaint in the Circuit Court against Cal Testing in Case No. 08 L 6675, alleging breach of contract for failure to identify problems with the steel supports fabricated by the Debtor. That case and the one filed by the Debtor in 2005 (Case No. 05 CH 2675) were subsequently consolidated into the City's 2007 case against Walsh (Case No. 07 L 3886).

About five years later, after the City and Walsh settled the City's claims against Walsh in Case No. 07 L 3886, the Circuit Court entered an agreed order on February 21, 2013, dismissing with prejudice the City's claims against Walsh. On March 12, 2013, Walsh then filed a second amended complaint against both the Debtor and Cal Testing. In response, Cal Testing filed a counterclaim for interpleader, seeking its dismissal from the case in exchange for a deposit of funds in the amount of $1,812,696, the remainder of Cal Testing's insurance policy limit. On May 13, 2013, the Circuit Court granted Cal Testing's interpleader and entered an order directing Cal Testing to deposit $1,812,696 with the Clerk (the "Cal Testing Deposit"). The order

provided that upon the deposit of those funds, Cal Testing was dismissed with prejudice and without costs from Case Nos. 07 L 3886 and 08 L 6675. Pursuant to the order, Cal Testing deposited the funds with the Clerk on June 4, 2013.

On June 28, 2013, the City and Walsh filed a joint motion, seeking to deposit with the Clerk funds in the amount of $1,554,654, the balance due to Walsh under its contract with the City, in exchange for the dismissal of all claims against the City by Walsh and the Debtor. Subsequently, on November 12, 2013, the Circuit Court entered an order directing the City to deposit $1,554,654 with the Clerk (the "City Deposit"). According to the order," LB Steel's lien [wa]s released as to the City only and [now] attaches to the deposited funds." Pursuant to the order, the City deposited the funds with the Clerk on November 12, 2013.

On October 14, 2015, after a six-week trial, the Circuit Court entered a judgment in the consolidated cases ("the Judgment Order"). The Judgment Order provided, in relevant part, as follows:

> 1. Judgment is entered in favor of Walsh . . . and against [the Debtor] . . . for Breach of Contract in the amount of $27,500,000.00;
>
> * * *
>
> 3. Judgment is entered in favor of [the Debtor] and against . . . Walsh . . . for breach of contract, in the amount of $6,500,000.00;
>
> * * *
>
> 5. Judgment is entered in favor of [the Debtor] and against Walsh on Count II of [the Debtor's] Counterclaim in Case No. 2007 L 3886 . . . for lien under 770 ILCS 60/23, in the amount of $1,554,654.00;
>
> 6. Judgment is entered in favor of [the Debtor] . . . on . . . [the Debtor's] Complaint against Cal Testing in Case No. 08 L 6675[] for the principal amount of $1,812,696.00 plus accrued interest that

        was deposited with the Clerk . . . by Cal Testing . . . . This
$1,812,696.00 is independent of, and in addition to, the
$6,500,000.00 awarded to [the Debtor] . . .;

* * *

11.    [The Debtor] shall be entitled to a credit for $6,500,000.00 based upon its contract claims, bond claim, and lien claim and $1,812,696.00 plus accrued interest based upon [the Debtor's] claims against [Cal] Testing and the funds deposited by [Cal] Testing (plus accrued interest), which amounts shall be set-off against [Walsh's] judgment, for a net judgment in favor of Walsh . . . and against [the Debtor] in the amount of $19,187,304.00, less accrued interest from funds deposited by [Cal] Testing;

* * *

13.    IT IS HEREBY ORDERED that the Clerk . . . shall release the $1,554,654.00 deposited by the City . . . with the Clerk . . ., plus accrued interest, to Walsh . . .;

14.    IT IS HEREBY ORDERED that the Clerk . . . shall release the $1,812,696.00 deposited by Cal Testing . . ., plus accrued interest, to Walsh . . .;

* * *

16.    Notwithstanding the Parties['] claim for attorneys' fees and costs against [the Debtor] and the continuance of this matter for this issue, this Court makes an express finding that there is no just reason for delaying either enforcement or appeal or both of this Judgment Order pursuant to Illinois Supreme Court Rule 304(a).

        On October 18, 2015, four days after entry of the Judgment Order, the Debtor filed a voluntary petition for relief under chapter 11. Shortly thereafter, on October 23, 2015, Walsh filed a motion to modify the automatic stay, seeking to withdraw the City Funds and the Cal Testing Funds deposited with the Clerk (together, the "Deposited Funds") and to allow Walsh to liquidate its claim for attorneys' fees and costs as provided for in the Judgment Order.

On December 4, 2015, the Debtor filed the instant adversary complaint against Walsh and the Clerk, alleging that the Deposited Funds are property of the bankruptcy estate and, thus, should be turned over to the Debtor.[2] On January 4, 2016, Walsh filed its motion to dismiss the complaint. According to Walsh, the Deposited Funds are not property of the estate because the Circuit Court ordered pre-petition setoff of mutual obligations, and, therefore, the complaint must be dismissed for failure to state a claim. In the alternative, Walsh asks the Court to abstain from making a decision under 28 U.S.C. § 1334(c)(1) because the appeal of the Judgment Order is pending in the Circuit Court.

The Court heard oral argument on March 8, 2016 on Walsh's motion to dismiss and then took the matter under advisement. After a review of the relevant pleadings, applicable case law, and the arguments of the parties, the Court is now ready to rule.

## STANDARDS UNDER RULE 12(b)(6)

A complaint will be dismissed under Rule 12(b)(6) unless it clears two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough factual information to give the defendant "fair notice" of the claim so that it can prepare its defense. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (internal quotation omitted). Second, the complaint must plausibly suggest that the plaintiff has a right to relief, the allegations raising that right above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[2] A week after filing the adversary complaint, the Debtor filed a motion to modify the automatic stay in the bankruptcy case in order to timely file a notice of appeal of the Judgment Order in the state court. Subsequently, Walsh, in turn, filed a motion to modify the automatic stay in order to file a cross-appeal of the Judgment Order. Both motions were granted on March 8, 2016.

Even when there is fair notice and a plausible claim, however, a complaint should be dismissed if the alleged facts do not state a claim as a matter of law. Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). If, as a matter of law, "no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Id.* at 327 (internal quotation and citation omitted).

## DISCUSSION

As in all cases in which a party moves for 12(b)(6) dismissal, the issue to be decided in this matter is whether the Debtor has stated a claim upon which relief can be granted. This determination turns on whether the Deposited Funds constitute property of the bankruptcy estate. The Debtor claims that the Deposited Funds are, indeed, property of the estate because the Circuit Court awarded them to the Debtor in the Judgment Order and that, therefore, they should be turned over to the Debtor pursuant to § 543(b).[3] Walsh maintains, to the contrary, that the Deposited Funds are not property of the estate because the Circuit Court ordered pre-petition setoff of mutual obligations. Based on a review of the terms of the Judgment Order and

---

[3] Section 543(b) provides, in relevant part:

(b) A custodian shall—

    (1) deliver to the trustee any property of the debtor held by or transferred to such custodian . . . that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case[.]"

11 U.S.C. § 543(b)(1).

applicable law, the Court holds that the Deposited Funds are not property of the Debtor's bankruptcy estate.

### 1. The Rooker-Feldman Doctrine

Before turning to the substantive issue in this matter, the Court addresses Walsh's contention that the Rooker-Feldman doctrine prohibits the Court from granting the relief sought by the Debtor. Specifically, Walsh argues that the granting of the relief requested by the Debtor would require the Court to review and ultimately overrule the terms of the Circuit Court's Judgment Order. According to Walsh, this type of review is expressly proscribed by the Rooker-Feldman doctrine, and, thus, the Court lacks jurisdiction over the adversary proceeding.

The Rooker-Feldman doctrine prevents "lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the [federal] court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (internal quotations omitted); *see Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 465-76 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414-16 (1923). Such challenges are barred in all federal court proceedings, other than actions in the United States Supreme Court, despite any errors that the state courts may have made. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012). Rather, the remedy for a party seeking review of a state court decision is the pursuit of a state court appeal. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Cain v. Deutsche Bank Aktiengesellschaft*, No. 12 C 10194, 2013 WL 3854250, at *1 (N.D. Ill. July 24, 2013).

The Rooker-Feldman doctrine applies to both direct attacks on state court judgments and "claims that are inextricably intertwined with state court determinations." *Long*, 182 F.3d at 554.

The key question in every Rooker-Feldman analysis is whether the federal court "is in essence being called upon to review the state-court [decision]." *Zurich Am. Ins. Co. v. Superior Ct.*, 326 F.3d 816, 823 (7th Cir. 2003) (internal quotation omitted); *Van Dyke v. Ill. Dep't. of Children & Family Servs.*, 13 C 5971, 2014 WL 2134580, at *6 (N.D. Ill. May 22, 2014). If "success in the federal court would require overturning the state court decision," then the federal court lacks jurisdiction over the claim. *Epps v. Credinet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003); *Frances v. Fed. Nat'l Mortg. Ass'n*, No. 14 C 00288, 2014 WL 2109892, at *1 (N.D. Ill. May 20, 2014) (quoting *Epps*).

In its complaint in this matter, the Debtor does not challenge the Circuit Court's Judgment Order. Rather, the Debtor is properly seeking review of the Judgment Order through a state court appeal. Here, the Debtor contends that the Deposited Funds are property of the bankruptcy estate *pursuant to* the Judgment Order. This Court need not overturn the Circuit Court's decision in order to determine the interests of the parties; it must simply decide what those interests are as a result of the Judgment Order. Thus, the Rooker-Feldman doctrine does not deprive the Court of jurisdiction over the Debtor's adversary proceeding.

Accordingly, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (E).

### 2. Property of the Estate

The filing of a bankruptcy case creates an estate comprised of the debtor's property. 11 U.S.C. § 541(a). Property of the estate is "broad[ly]" defined by the Code, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983), encompassing "all legal or equitable interests

of the debtor in property," 11 U.S.C. § 541(a)(1). Thus, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is [property of the estate] within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 134 S. Ct. 1188 (2014).

Despite the expansive scope of the definition, however, § 541(a)(1) also imposes "a temporal limit on which interests become part of the estate." *O'Hare Midway Limousine Serv., Inc. v. Conroy (In re Conroy)*, Nos. 05 B 26056, 05 A 2058, 2006 WL 1005065, at *2 (Bankr. N.D. Ill. Apr. 17, 2006). Significantly, estate property is limited to only those interests held by the debtor "as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Although what constitutes property of the estate is a question of federal law under § 541, state law determines whether a debtor has an interest in property in the first instance. *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). In this matter, the Debtor's interest in the Deposited Funds depends on the terms of the Circuit Court's Judgment Order and the effect of those terms under state law.

According to the Judgment Order, Walsh was awarded $27,500,000 on its breach of contract claim against the Debtor. (J. Order ¶ 1.) The Debtor, in turn, was awarded $6,500,000 on its breach of contract claim against Walsh. (*Id.* at ¶ 3.) That figure includes the Debtor's lien claim of $1,554,654 on the City Funds, which the Circuit Court found to be valid. (*Id.* at ¶ 5.) In addition, the Debtor was awarded $1,812,696, plus accrued interest, in connection with the interpleader claim filed by Cal Testing. (*Id.* at ¶ 6.) The Judgment Order then expressly provided that the amounts awarded to the Debtor be set off against the amount awarded to

Walsh. (*Id.* at ¶ 11 ("[The Debtor] shall be entitled to a credit for $6,500,000.00 based upon its contract claims, bond claim, and lien claim and $1,812,696.00 plus accrued interest based upon [the Debtor's] claims against [Cal] Testing and the funds deposited by [Cal] Testing (plus accrued interest), ***which amounts shall be set-off*** against [Walsh's] judgment, ***for a net judgment*** in favor of Walsh . . . and against [the Debtor] in the amount of $19,187,304.00 . . . [.]" (emphasis added)).

The applicable state law here is the Code of Civil Procedure, 735 ILCS 5/1-101 *et seq.* (2014). Section 12-176 of that Code provides for the right of setoff, stating, in pertinent part, that "[j]udgments between the same parties may be set off, one against another . . . ." 735 ILCS 5/12-176 (2014).

In general, setoff allows parties that owe mutual debts to each other "to assert the amounts owed on these debts, subtract one from the other, and then pay only the balance." *In re Johnson*, 215 B.R. 381, 385 (Bankr. N.D. Ill. 1997). Setoff avoids "the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (internal quotation omitted). The right of setoff is within the discretion of the court and should be exercised under the principles of equity. *Johnson*, 215 B.R. at 385.

Section 553 of the Bankruptcy Code recognizes and allows for setoff when four conditions have been met: (1) the creditor holds a pre-petition "claim" against the debtor; (2) the creditor owes a "debt" to the debtor that also arose pre-petition; (3) the claim and the debt are "mutual"; and (4) both the claim and the debt are valid and enforceable. *Ingersoll Int'l, Inc. v. Iscar, Ltd. (In re Ingersoll, Inc.)*, Nos. 03 B 72223, 05 A 96087, 2009 WL 2215101, at *4 (Bankr. N.D. Ill. July 23, 2009). Section 553 itself does not create the right of setoff; it "merely

11

recognizes and preserves setoff rights that exist under other applicable law, and then only to the extent that the conditions of section 553 are satisfied." *Newberry v. United States (In re Newberry)*, Nos. 12 B 40455, 12 A 4060, 2013 WL 618746, at *2 (Bankr. S.D. Ill. Feb. 19, 2013) (internal quotation omitted).

The Debtor does not dispute that applicable nonbankruptcy law provides for the right of setoff. The Debtor argues, however, that the Deposited Funds have not been set off for two primary reasons: (1) the Deposited Funds are not debts mutual to the Debtor and Walsh, and (2) the Circuit Court awarded the Deposited Funds to the Debtor and ordered the Clerk to release the Funds to Walsh merely as post-judgment collection and satisfaction of judgment. The Court will address each argument in turn.

### A. Mutuality

First, the Debtor maintains that there is no mutuality between the amounts owed by the City and Cal Testing to the Debtor and the amounts owed by the Debtor to Walsh. As the Debtor quite rightly explains, a valid setoff under applicable state law requires mutuality of obligation between the parties. Specifically, § 12-178 of the Code of Civil Procedure provides, in pertinent part, that "set-off shall not be allowed . . . [w]hen the creditor in one of the judgments is not in the same capacity and trust as the debtor in the other." 735 ILCS 5/12-178(1) (2014). Similarly, mutuality is required for purposes of setoff under § 553 of the Bankruptcy Code. That condition is satisfied "when the offsetting obligations are held by the same parties in the same capacity . . . and are valid and enforceable, and . . . both offsetting obligations arise either prepetition or post-petition, even if they arose at different times out of different transactions." *Meyer Med.*

*Physicians Grp., Ltd. v. Health Care Serv. Corp. (In re Meyer Med. Physicians Grp., Ltd.)*, 385 F.3d 1039, 1041 (7th Cir. 2004) (internal quotation omitted).

The Debtor contends that mutuality does not exist here because the obligations are owed in different capacities. According to the Debtor, the Circuit Court awarded the City Funds to the Debtor for its mechanic's lien on the City's public funds associated with the construction Project and awarded the Cal Testing Funds to the Debtor for its claim against Cal Testing. Thus, the Debtor argues, there is no mutuality between the amounts owed to the Debtor by the City and Cal Testing and the amounts owed to Walsh by the Debtor.

Walsh strenuously disagrees. According to Walsh, the debts at issue are mutual for purposes of setoff because: (1) the City Funds were contract funds owed to Walsh and on which the Debtor claimed a lien, and (2) Walsh asserted a direct claim against Cal Testing arising from its work on the Project, as did the Debtor, which caused Cal Testing to file a counterclaim for interpleader seeking to deposit the Cal Testing Funds with the Clerk.

Notwithstanding the parties' conflicting postures, the Debtor's mutuality argument is a nonstarter. The Circuit Court already decided that the obligations at issue were mutual for purposes of setoff by ordering that the Deposited Funds and other amounts awarded to the Debtor be set off against Walsh's judgment. As discussed above in its discussion of the Rooker-Feldman doctrine, this Court cannot–and will not–review or overturn the terms of the Circuit Court's Judgment Order.

### B. Setoff or Post-Judgment Collection

The Debtor also contends that the Deposited Funds were not set off because the Circuit Court ordered their release by the Clerk to Walsh simply as post-judgment collection and

13

satisfaction of judgment. Specifically, the Debtor claims that a valid setoff did not occur because neither Walsh nor the Debtor obtained possession of the Deposited Funds before the petition date. Thus, the Debtor argues, the Deposited Funds remain property of the bankruptcy estate.

In support of its position, the Debtor cites to *In re Alanis*, No. 12 B 07465, 2012 WL 1565355 (Bankr. N.D. Ill. May 2, 2012), and *In re Quade*, 482 B.R. 217 (Bankr. N.D. Ill. 2012), *aff'd sub nom. Entm't Events, Inc. v. Quade (In re Quade)*, 498 B.R. 852 (N.D. Ill. 2013). In the context of the issuance of a citation order, the court in *Alanis* addressed the issue of whether a state court order directing transfer of funds from a debtor's bank accounts resulted in the immediate loss of the debtor's interest in the funds before they were actually transferred by the bank. *Alanis*, 2012 WL 1565355, at *1. The court concluded that the debtor had an interest in the funds in the bank accounts, subject to the creditor's lien, because the court's turnover order had not yet been served on the bank. *Id.* at *3 (finding that "if [the debtor] had paid the judgment before the order was served, the funds would have retained their status as [the debtor's] property, no longer subject to [the creditor's] lien"). The court found support for its conclusion in *Barnhill v. Johnson*, in which the United States Supreme Court decided that, in a preference context, the date a check is honored, rather than the date it is tendered, is the date an actual transfer occurs:

> [N]o transfer of any part of the debtor's claim against the bank occurred until the bank honored the check . . . [at which time,] the bank had a right to "charge" the debtor's account . . . and [the creditor] no longer had a claim against the debtor. Honoring the check, in short, left the debtor in the position that it would have occupied if it had withdrawn cash from its account and handed it over to [the creditor]. We thus believe that when the debtor has directed the drawee bank to honor the check *and* the bank has done so, the debtor has implemented a "mode, direct or *indirect* . . . of disposing . . . of property or . . . an interest in property." 11 U.S.C. § 101(54) (1988 ed., Supp. II) (emphasis added). For the purposes of payment by ordinary check, therefore, a "transfer" as defined by § 101(54) occurs on the date of honor, and not before.

503 U.S. 393, 399-400 (1992). Thus, the court in *Alanis* found that, until the bank complied with the turnover order that would then charge the debtor's bank accounts, the funds in the accounts continued to belong to the debtor and became part of the debtor's estate upon the filing of the bankruptcy case. *Alanis*, 2012 WL 1565355, at *3.

The *Quade* court echoed the reasoning in *Alanis*. In *Quade*, a creditor obtained a pre-petition judgment against a debtor and served both citations to discover assets on the debtor (and three corporations in which he was an officer, director, and shareholder) and a non-wage garnishment on the debtor's bank. 482 B.R. at 222. Thereafter, the state court issued a turnover order which was served on the bank, but the debtor filed a petition under chapter 7 before the bank turned over the debtor's funds. *Id.* at 223-24. Given these facts, the court found that "a turnover order for which no prepetition turnover was in fact effectuated does not constitute a transfer for the purposes of defeating the application of section 541 . . . ." *Id.* at 229.

*Alanis* and *Quade* are distinguishable from the matter at bar. In both *Alanis* and *Quade*, a creditor with a pre-petition judgment against the debtor commenced post-judgment supplementary proceedings by serving citations to discover assets and, in *Quade*, a non-wage garnishment on bank accounts titled in the debtor's name. In both cases, the state court entered turnover orders directing the debtor's bank to release funds held in the debtor's account. In contrast, no citations were served in the instant case, and funds were not held in a bank account titled in the Debtor's name. In addition, no order directing the turnover of funds was issued. That is because setoff obviates the need for turnover. *See* 11 U.S.C. § 542(b) (stating that "an entity that owes a debt that is property of the estate . . . shall pay such debt to . . . the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim

15

against the debtor"); *see also Marketview Motors, Inc. v. Johnson (In re Johnson)*, Nos. 08 B 83241, 09 A 8010, 2009 WL 1024582, at *2 (Bankr. C.D. Ill. Apr. 15, 2009) (explaining, in the context of §§ 542 and 543, that turnover is not a remedy to determine disputed rights to parties in property but to obtain what has already been determined to be property of the estate).

In addition, in presenting the determinations made by the court in *Quade*, the Debtor analyzed only the court's discussion about property of the estate under § 541, concluding that with respect to "'transfers of property interests, property not indefeasibly divested from the debtor also becomes property of the bankruptcy estate . . . .'" (Debtor's Resp. to Walsh's Mot. to Dismiss at 8-10 (quoting *Quade*, 482 B.R. at 225).) *Quade*, however, went further, discussing the effect of setoff on the issue of whether property becomes part of the estate. Specifically, the *Quade* court concluded that "[t]o the extent that a creditor sets off a prepetition debt against a prepetition obligation prior to the bankruptcy case having been commenced, such setoff does in fact effectuate a transfer that prevents the subject property from becoming property of the estate–except to the extent that such setoff may be a transfer avoidable under chapter 5 of the Bankruptcy Code." *Quade*, 482 B.R. at 229.

Here, the Circuit Court's Judgment Order explicitly directs that the amounts awarded to the Debtor be set off against the amount awarded to Walsh. And there is no allegation or suggestion that the setoffs are avoidable under chapter 5 of the Bankruptcy Code.

Despite the holding in *Quade*, the Debtor steadfastly adheres to its position. And, during oral argument before the Court on March 8, 2016, the Debtor offered one additional argument in support of its contention that the Circuit Court ordered the release of the Deposited Funds to Walsh merely as post-judgment collection. Focusing on the language of the Judgment Order

itself, the Debtor pointed to the Circuit Court's use of the word "shall" in paragraphs 11, 13, and 14:

> 11. [The Debtor] shall be entitled to a credit for $6,500,000.00 based upon its contract claims, bond claim, and lien claim and $1,812,696.00 plus accrued interest based upon [the Debtor's] claims against [Cal] Testing and the funds deposited by [Cal] Testing (plus accrued interest), which amounts ***shall be set-off against [Walsh's] judgment***, for a net judgment in favor of Walsh . . . and against [the Debtor] in the amount of $19,187,304.00, less accrued interest from funds deposited by [Cal] Testing;
>
> 13. IT IS HEREBY ORDERED that ***the Clerk . . . shall release*** the $1,554,654.00 deposited by the City . . . with the Clerk . . ., plus accrued interest, to Walsh . . .;
>
> 14. IT IS HEREBY ORDERED that ***the Clerk . . . shall release*** the $1,812,696.00 deposited by Cal Testing . . ., plus accrued interest, to Walsh . . . [.]

(J. Order ¶¶ 11, 13, 14 (emphasis added).) According to the Debtor, the word "shall" in these instances means "will" and, thus, both the setoff and the release of the Deposited Funds were to take place in the future. Accordingly, the Debtor argues, the setoff and release were not effectuated pre-petition, when the Judgment Order was entered, and the Deposited Funds remain property of the bankruptcy estate.

When used in the first person, the word "shall" is commonly used "to indicate simple future time [I *shall* probably go tomorrow][.]" *Webster's New World College Dictionary* 1316 (4th ed. 2008). Used in the second or third person, however, particularly in formal writing, the word "shall" expresses "determination, compulsion, obligation, or necessity[.]" *Id.* Indeed, in legal parlance, "shall" typically means "should" or "is required to." Although *Black's Law Dictionary* includes "[w]ill" among the definitions for "shall," the word is defined, first and

foremost, as follows: "1. Has a duty to; more broadly, is required to <the requester shall send notice> <notice shall be sent>. • This is the mandatory sense that drafters typically intend and that courts typically uphold. . . . 2. Should (as often interpreted by courts) <all claimants shall request mediation>." *Black's Law Dictionary* 1499 (9th ed. 2009).

The United States Supreme Court confirms that, in interpreting legal texts, the word "shall" "generally means 'must.'" *Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 924 (2015) (internal quotation omitted) ("[W]hen the word *shall* can reasonably [be] read as mandatory, it ought to be so read'"). A survey of case law reveals that other courts use the same interpretation.[4] In fact, in cases involving statutory interpretation, Illinois courts construe the word "shall" "as a clear expression of . . . [an] intent to impose a mandatory obligation." *People v. O'Brien*, 754 N.E.2d 327, 330 (Ill. 2001). There is no reason to construe the word differently when it is used in a court order. *Rios v. Astrue*, No. 09 C 7348, 2010 WL 4736485, at *8 (N.D. Ill. Nov. 15, 2010).

Given the authority above, the Court finds that the Circuit Court's use of the word "shall" in the Judgment Order is reasonably read to mean "must," rather than "will." In paragraph 11, in particular, in which the Circuit Court provides for setoff, the text states that the amounts awarded

---

[4] *See, e.g., Leon's Auto Sales, Inc. v. Leedom & Assocs., LLC*, No. 15 C 3069, 2015 WL 4978696, at *3 (N.D. Ill. Aug. 19, 2015) (noting that the word "shall" in a contractual forum selection provision was "most reasonably interpreted to mandate venue"); *Gordon v. Bd. of Educ. of Laraway Cmty. Consol. Sch. Dist. 70-C*, 14 F. Supp. 3d 1101, 1105 (N.D. Ill. 2014) (stating that "[t]he School Code's use of the word 'shall' leaves no room for interpretation–it requires 'goals and indicators of student performance and academic improvement . . . to measure the performance and effectiveness of the superintendent'"); *First State Bank v. Zahos (In re Zahos)*, Nos. 11 B 91275, 12 A 9007, 2012 WL 2384372, at *2 (Bankr. C.D. Ill. June 25, 2012) (noting in the interpretation of the use of the word "shall" in Rule 4008(a) that "it is clear that the drafters intended the filing of a cover sheet with a reaffirmation agreement to be mandatory").

to the Debtor "*shall* be set-off against [Walsh's] judgment, *for a net judgment* in favor of Walsh . . . and against [the Debtor] *in the amount of $19,187,304.00* . . . [.]" (J. Order ¶ 11 (emphasis added).) This language demonstrates that setoff was accomplished with the entry of the Judgment Order and resulted in the net judgment in favor of Walsh–not that setoff would be achieved at some time in the future. The Court sees no reason to construe the word "shall" as anything but an "intent to impose a mandatory obligation."

Based on the foregoing, the Court holds that the setoff was done pre-petition–through and at the time of the entry of the Judgment Order. Thus, the setoff effectuated a transfer, and the Deposited Funds are not property of the Debtor's bankruptcy estate. Only estate property can be the subject of a turnover order. *Marketview Motors,* 2009 WL 1024582, at *2; *Johnson,* 215 B.R. at 386. Therefore, Walsh's motion to dismiss the Debtor's adversary proceeding will be granted, and the Debtor's complaint will be dismissed. As a result, the Court need not address Walsh's request, in the alternative, for abstention.

## CONCLUSION

For the reasons set forth above, the Court finds that the Deposited Funds are not property of the Debtor's bankruptcy estate and that, therefore, those funds cannot be turned over to the Debtor. Thus, the Debtor has failed to state a claim upon which relief can be granted and, in fact, cannot assert any set of facts establishing its entitlement to the relief it seeks. Accordingly, the Court grants Walsh's motion to dismiss the Debtor's complaint, and that complaint is dismissed with prejudice pursuant to Rule 12(b)(6). A separate order will be entered consistent with this Memorandum Opinion.

Dated: March 29, 2016          ENTERED:

_____
Janet S. Baer
Bankruptcy Judge